JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Defendant-appellant Dorian Stone appeals his conviction, following a bench trial, for impersonating a police officer in violation of R.C. 2921.51(C). The trial court sentenced Stone to 180 days' confinement in the Hamilton County Justice Center, with 120 days suspended, and one year of probation. The terms of the probation required Stone to seek mental-health services as recommended by the probation department. Stone now appeals, raising two assignments of error.[1]
In his first assignment of error, Stone argues that there was insufficient evidence to support his conviction. In his second assignment of error, Stone contends that his conviction was against the manifest weight of the evidence. Because these assignments are interrelated, we address them together.
A claim of insufficiency of the evidence argues a total failure of proof as to at least one of the elements of the charged offense.[2] When reviewing a sufficiency claim, a reviewing court must look to see if a rational trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt.[3] When reviewing a defendant's claim that his conviction was against the manifest weight of the evidence, a reviewing court must look to see if the state presented the greater amount of credible evidence to sustain the conviction.[4]
During the trial in this case, the state presented testimony from an undercover Cincinnati police officer. The undercover officer testified that on November 14, 2002, he was working in plainclothes and driving an unmarked car. The officer stated that he was following a drug suspect in another vehicle. The officer testified that the suspect's vehicle had stopped at a traffic light at an intersection on Hamilton Avenue, so the officer pulled up behind him. In the meantime, another vehicle had pulled alongside the officer's vehicle at the intersection. When the light turned green, this vehicle pulled in front of the officer's car, blocking his lane. Then an individual in the front passenger side of the vehicle, whom police later identified as Stone, leaned out the passenger window, yelled that he was a Cincinnati police officer, flashed a Cincinnati police badge, and told the undercover officer to pull his car over. The officer testified that Stone's vehicle "cut the car in front of mine and detained me from continuing on southbound behind the target I was following." When asked how long he was detained, the officer replied, "I was actually stopped. I could not move the vehicle forward for approximately 30 seconds." As a result of this detention, the officer lost the car that he was following.
After an unsuccessful attempt to relocate the suspect, the undercover officer returned to a shopping plaza at the intersection to see if he could locate Stone. The officer saw Stone standing by a vehicle in the parking lot of the plaza. The undercover officer parked nearby and contacted his supervisor about approaching Stone. During this time, Stone called for emergency assistance two times. Both times, Stone claimed that the officer had been driving erratically and was now following him. Local police responded to Stone's telephone calls. Following the second call, the police pulled the undercover officer out of his car at gunpoint. The officer's supervisor was subsequently able to convince the local police that they had detained an undercover officer. The undercover officer, his supervisor, and local police then went to talk to Stone. During their conversation, Stone admitted he was not a police officer. When the police searched his person, they found a Cincinnati police badge in his pants pocket.
Stone testified in his own defense. He stated that he was a passenger in a car on the day in question when he saw the undercover officer driving erratically. He recalled the car in which he was riding pulling alongside the undercover officer's car at a traffic light. Stone stated that he might have given the officer a "dirty look," but that he never told the driver of the car to block the officer's car. He also denied leaning out the window, flashing a police badge, and yelling for the officer to pull over. Stone admitted calling for emergency assistance when he saw the undercover officer driving around the parking lot while he was waiting for his friends. Stone told the operator that the officer had earlier tried to run him off the road and was now following him with a gun. Stone stated that he called emergency assistance a second time because he felt the police had ignored his first call. Stone stated that he was confused when the undercover officer, his supervisor, and local police subsequently approached him. During cross-examination, Stone acknowledged that he was not a Cincinnati police officer. When asked about the badge, Stone stated that he had just happened to have it on him that day.
Stone contends that the evidence was insufficient to show that he had "detained" the undercover officer. R.C. 2921.51(C) provides that "[n]o person, by impersonating a peace officer * * * shall * * * detain any person * * *." Having reviewed the record, we conclude there was sufficient evidence to convict Stone of impersonating a police officer.[5] The undercover officer testified that Stone had leaned out the car window brandishing a police badge. Police later recovered the badge in Stone's pants pocket. Furthermore, the undercover officer testified that he was detained about 30 seconds at the light and lost his suspect because of Stone's actions. The trial court stated that it "* * * believe[d] there was a detention here. * * * There is no question [the undercover] officer was detained for some period of time, albeit briefly."
Furthermore, we cannot say that the trial court, as the trier of fact, lost its way and created such a manifest miscarriage of justice that we must reverse Stone's conviction and order a new trial. Here, the trial court was faced with two different versions of the events. The trial court acknowledged as much on the record, when it stated that "it st[r]etches the bounds of credibility to believe that a person carrying a Cincinnati police badge in his pocket as a coincidence had that in his pocket and did not commit the act that * * * the officer claimed was committed, I believe [the] [o]fficer * * *." Because the trial court, as the trier of fact, was in the best position to judge the credibility of the witnesses and because it was free to reject Stone's testimony, we cannot say that the trial court's judgment was against the manifest weight of the evidence. We, therefore, overrule Stone's first and second assignments of error and affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Gorman and Sundermann, JJ.
[1] The trial court stayed the execution of Stone's sentence pending this appeal.
[2] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[3] State v. Eley (1978), 56 Ohio St.2d 169, 172,383 N.E.2d 132.
[4] Thompkins, supra, at 387.
[5] State v. Powell (1999), 134 Ohio App.3d 616,731 N.E.2d 1170.